FILED

2026 May-20  PM 12:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
SOUTHERN DIVISION**

| | |
|---|---|
| SENECA INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> FOURTH AND NINETEENTH LLC; TERRY WHITE; JUSTIN MITCHELL; KIRSTEN MCCORKLE; SHAWNA RAGLAND; TIMOTHY RAGLAND; and ROBERT L. CROOK JR. <br><br> Defendants. | Case No.: 2:26-cv-00502-EGL |

**Exhibit A to**

**FIRST AMENDMENT TO COMPLAINT
<u>FOR DECLARATORY JUDGMENT</u>**

ELECTRONICALLY FILED
4/18/2025 9:40 AM
01-CV-2024-900860.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## CIVIL DIVISION

| | | |
|---|---|---|
| TERRY WHITE, An individual on behalf of himself and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PARKING ENFORCEMENT SYSTEMS, INC; CRC 2, LLC, an Alabama Limited Liability Company; ROBERT CROOK, an individual | ) ) ) ) ) ) | Civil Action No. 01-CV-2024-900860 JURY TRIAL DEMANDED |
| Defendants, | ) | |
| | | |
| JUSTIN MITCHELL, An individual on behalf of himself and All others similarly situated | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| PARKING ENFORCEMENT SYSTEMS, INC., an Alabama Corporation; CULLMAN PROPERTY CO., an Alabama Corporation; BRUNGART PROPERTIES II, LLC, an Alabama Limited Liability Company; BANK OF AMERICA, NA as trustee for Margaret Gaston, a foreign corporation; FOURTH AND NINETEENTH, LLC an Alabama Limited Liability Company | ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1

Defendants,                          )


KIRSTEN MCCORKLE,                                    )
An individual on behalf of herself and all  )
others similarly situated                            )
                                                     )
                Plaintiff,                            )
                                                     )
v.                                                   )
                                                     )
PARKING ENFORCEMENT                                  )
SYSTEMS, INC.;                                       )
CRC 5, LLC, an Alabama Limited                       )
Liability Company;                                   )
ROBERT CROOK, an individual                          )
                                                     )
                Defendants,                          )


SHAWNA RAGLAND,                                      )
An individual on behalf of herself and all  )
others similarly situated                            )
TIMOTHY RAGLAND,                                     )
An individual on behalf of himself and all  )
others similarly situated;                           )
                                                     )
                Plaintiffs,                          )
v.                                                   )
                                                     )
PARKING ENFORCEMENT SYSTEMS,  )
INC., an Alabama Corporation;                        )
FIFTH AVENUE HOLDINGS, LLC                           )
An Alabama Limited Liability Company;  )
                                                     )
                Defendants,                          )

2

FICTICIOUS DEFENDANTS 1-30,　　　)
whether singular or plural, entity or　　)
entities, whose negligence, recklessness, )
and/or wantonness proximately caused or )
contributed to cause the damages　　　)
suffered by Plaintiff on the date and　　)
occasion made the basis of this lawsuit　)
or who was unjustly enriched as a result )
of the actions of the Defendants　　　 )
whose names are currently unknown but )
will be added by amendment when　　　)
ascertained.　　　　　　　　　　　 )
　　　　　　　　Defendants.　　　　　)

## FIRST AMENDED CLASS COMPLAINT

Plaintiff amends his previously filed class complaint to add additional Plaintiffs,

clarify the claims of the proposed class and add additional class representatives and

Defendants.  Plaintiffs, Terry White ("Plaintiff" and/or "Mr. White"), Justin Mitchell

("Plaintiff" and/or "Mr. Mitchell"), Kirsten McCorkle ("Plaintiff" and/or "Ms.

McCorkle"), Shawna Ragland ("Plaintiff" and/or "Ms. Ragland"), and Timothy

Ragland ("Plaintiff" and/or "Mr. Ragland") on behalf of themselves and all others

similarly situated, by and through their undersigned counsel, assert the following

claims for relief against Defendants, CRC2, CRC5, Crook, Cullman Fifth Avenue,

Brungart, Bank of America, Fourth and Nineteenth ("the lot owners") as follows:

## INTRODUCTION

Mr. White, Mr. Mitchell, Ms. McCorkle, Ms. Ragland, and Mr. Ragland bring this

class-action Complaint seeking relief from Defendants' pattern and practice of illegal

3

and predatory parking and towing practices in private "Pay to Park" lots located in downtown Birmingham, Alabama.

Defendants' practices include illegal towing and over-charging of parking and towing fees against local and visiting patrons of Birmingham's numerous downtown businesses, dining, and entertainment establishments. Defendants' conduct particularly hurts patrons of the shops and restaurants in the City of Birmingham who may not be familiar with the "Pay to Park Apps" (the "App") or not understand the signage required to park in lots such as owned by CRC2, CRC5, Crook, Cullman Fifth Avenue, Brungart, Bank of America, Fourth and Nineteenth and "enforced" by PES. Regrettably, PES's collection practices, carried out in collusion with the Lot Owners are unconscionable and mafioso in nature. As one Birmingham businessman put it, "These folks are modern day pirates, they are unabashed predators. Rude, arrogant, and pernicious."[1]

The consequences are catastrophic if someone using the App to park inputs a wrong number or fails to understand the App and the information being conveyed via the App or through third parties to PES.  Not only is the patron's vehicle illegally towed, but the patron and their guest must locate their vehicle, travel to the tow lot, and are forced to pay a statutory fee of $160.00, or more, to retrieve their vehicle. Each time a person has legitimately paid to park but gets towed for simply making a mistake in entering the correct tag number, or the App automatically populates the

---

[1] See Al.com report "Legal records show recent public outcry against Parking Enforcement Systems is nothing new." https://www.al.com/news/birmingham/2023/01/legal-records-show-recent-public-outcry-against-parking-enforcement-systems-is-nothing-new.html, January 26, 2023.

wrong information, Defendants violate the City of Birmingham ordinances by collecting more than one-half of the statutory towing fee.[2]

The vehicle owners are not provided with the necessary records and receipts required by the City of Birmingham statutes and ordinances. The parking lot owners, and others are unjustly enriched by charging for the same parking space after the first vehicle is towed, despite having received the rent fee from the first person.

PES has a community wide reputation for bullying, demeaning, and being rude to the public, effectively making the public beg to get their vehicles back. PES also forces the owner of the vehicle to electronically "sign" and assent to terms and conditions never agreed to in the initial parking space rental transaction. PES's hostile rhetoric, animosity, and propensity for violence toward the public may have contributed to the 2022 shooting death of a pay-to-park customer by representatives of PES.

This type of predatory towing and mafia-like collection practices have been a black eye on the City of Birmingham and Jefferson County for over a decade. Plaintiffs ask this Court to put a stop to such conduct and release Birmingham's downtown patrons from their ugly, unfair and predatory practices.

## PARTIES

1. The Plaintiff, **Terry White**, **hereinafter sometimes referred to as "Plaintiff,"** is an individual over the age of nineteen (19) years, who is a resident of Jefferson

---

[2] See City of Birmingham Ordinance § 12-19-85(b).

County, Alabama. Mr. White is a 71-year-old man and within the protected class of people.

2. The Plaintiff, **Justin Mitchell, hereinafter sometimes referred to as "Plaintiff,"** is an individual over the age of nineteen (19) years, who is a resident of Jefferson County, Alabama, and within the protected class of people.

3. The Plaintiff, **Kirsten McCorkle, hereinafter sometimes referred to as "Plaintiff,"** is an individual over the age of nineteen (19) years, who is a resident of Jefferson County, Alabama, and within the protected class of people.

4. The Plaintiff, **Shawna Ragland, hereinafter sometimes referred to as "Plaintiff,"** is an individual over the age of nineteen (19) years, who is a resident of Blount County, Alabama, and within the protected class of people.

5. The Plaintiff, **Timothy Ragland, hereinafter sometimes referred to as "Plaintiff,"** is an individual over the age of nineteen (19) years, who is a resident of Blount County, Alabama, and within the protected class of people.

6. The Defendant, **Parking Enforcement Systems, Inc.**, **hereinafter referred to as "PES" and/or "Defendant**," is an Alabama corporation, engaged, *inter alia*, in the nonconsensual towing of automobiles, and whose principal place of business is located within Jefferson County, Alabama.

7. The Defendant, **CRC 2, LLC, hereinafter referred to as "CRC2" and/or "Defendant,"** is the owner of the parking lots located at 2309 3rd Avenue North, 2311 3rd Avenue North, and 2314 3rd Avenue North, Birmingham, Alabama.

6

Through information and belief, Defendant CRC 2, LLC, is an Alabama Limited Liability Corporation whose principal place of business is located in Jefferson County, Alabama.

8. The Defendant, **CRC 5, LLC, hereinafter referred to as "CRC5" and/or "Defendant,"** is the owner of the parking lot located at 2130 2nd Avenue North, Birmingham, Alabama. Through information and belief, Defendant CRC 5, LLC, is an Alabama Limited Liability Corporation whose principal place of business is located in Jefferson County, Alabama.

9. The Defendant, **Robert L. Crook, Jr., hereinafter referred to as "Crook" and/or "Defendant,"** is the owner and managing member of CRC 2, LLC and CRC 5, LLC. Through information and belief, Crook hired and directs PES in its parking enforcement operations. Additionally, through information and belief, Crook owns and leases many other private parking lots within the City of Birmingham and Jefferson County and owns and manages the "tow lot" located at 2608 5th Avenue South, Birmingham, Alabama where PES operates its business.

10. The Defendant, **Cullman Property Co., hereinafter referred to as "Cullman" and/or "Defendant,"** is the owner of the parking lot located at 1831 4th Avenue North, Birmingham, Alabama. Through information and belief, Defendant Cullman is an Alabama Corporation whose principal place of business is located in Jefferson County, Alabama.

11. The Defendant, **Fifth Avenue Holdings**, **LLC hereinafter referred to as "Fifth Avenue" and/or "Defendant,"** is through information and belief the

7

owner of the parking lot located at 2200 5th Avenue South, Birmingham, Alabama 35233. Through information and belief, Fifth Avenue is an Alabama Limited Liability Company who operates a pay to park lot at that address and its principal place of business is located within Jefferson County, Alabama.

12. Defendant, **Brungart Properties, II, LLC** hereinafter referred to as "**Brungart" and/or "Defendant,"** is an Alabama Limited Liability Company and is one of the owners of the parking lot located at 1831 4th Avenue North, Birmingham, Alabama 35203. Through information and belief, Brungart is an Alabama Limited Liability Company who operates a pay to park lot at that address and its principal place of business is located within Jefferson County, Alabama.

13. Defendant, **Bank of America, N.A**. as trustee for Margaret Gaston hereinafter referred to as "**Bank of America" and/or Defendant,"** is through information and belief a National Association and who is, in its capacity as trustee, one of the owners/operators of the parking lot located 1831 4th Avenue North, Birmingham, Alabama 35203. Through information and belief, Bank of America operates a pay to park lot at that address.

14. Defendant, **Fourth and Nineteenth, LLC hereinafter referred to as "Fourth and Nineteenth" and/or "Defendant,"** is an Alabama Limited Liability Company, who through information and belief, is one of the owners/operators of the parking lot located 1831 4th Avenue North, Birmingham,

8

Alabama 35203. Through information and belief, Fourth and Nineteenth operates a pay to park lot at that address.

15. FICTITIOUS DEFENDANTS ONE THROUGH THIRTY, whether singular or plural, entity or entities, whose negligence, recklessness and/or wantonness proximately caused or contributed to cause the damages suffered by the Plaintiffs and the class members they seek to represent on the dates and occasions made basis of this lawsuit.

16. Plaintiffs, and the class members they seek to represent, aver that the identities of the FICTITIOUS DEFENDANTS are otherwise unknown to Plaintiffs and class members at this time, or, if their names are known to Plaintiffs or class members, their identities as Proper Party Defendants are not known to Plaintiffs or class members at this time, and their names and identities as Proper Party Defendants will be substituted by amendment when ascertained.

17. In doing the acts and omissions herein alleged, Plaintiffs, and the class they seek to represent, allege that Defendants conspired with and among one another and/or with other individuals or entities presently unknown to Plaintiffs and class members to engage in the conduct made the subject of this Complaint, and acted as agents of one another, pursuant to a common goal or scheme to carry out wrongful patterns.

18. As the principal of its employees and agents, Defendants are liable to Plaintiffs, and the class they seek to represent, for any and all damages suffered by Plaintiffs and class members as a result of the unlawful acts of Defendants' employees and

9

agents. The duties owed to the Plaintiffs, and the class members they seek to represent, under Alabama law are nondelegable duties and as such all the above Defendants are jointly and severally liable to the Plaintiffs and class members for their damages.

## ALTERNATIVE PLEADINGS

19. Plaintiffs, and the class members they seek to represent, allege that the occurrences made the subject of this Complaint require that Plaintiffs and class members plead one or more of the following counts, or, in some cases, one or more of the individual claims thereof, in the alternative, where inconsistency arises in its application.

## FACTUAL ALLEGATIONS

20. Plaintiffs, and the class they seek to represent, hereby incorporate and adopt each of the above and foregoing allegations and material averments as if fully set forth herein.

21. The revitalization of downtown Birmingham has rapidly progressed, introducing numerous restaurants, entertainment centers, and businesses to the area. An unfortunate side-effect of this growth is that parking for the general public is severely limited and often difficult to find.

22. Due to the lack of adequate public parking, private "pay to park" parking lots now make substantial monies each day for short-term rental of parking spaces, thereby

allowing customers visiting the restaurants and businesses in downtown Birmingham to park and enjoy local establishments.

23. To curb unauthorized parking, the City of Birmingham enacted ordinances regarding vehicle "booting" and towing of unauthorized cars in private parking lots.

24. A significant number of the private parking lots in downtown Birmingham are owned by single member LLCs and small corporations, and are serviced or "enforced" by PES. For over ten years, the Birmingham City Council has received numerous complaints regarding the predatory towing tactics of PES.[3]

25. In June 2023, Birmingham City Council member Valerie Abbot commented at a City Council meeting about the number of complaints regarding the towing practices of PES…"This is something we get complaints about every single weekend, and sometimes in between, because we have issues with our ordinance…All the people who've been towed away need to come to that meeting and let us know how they feel, even though they've already called us a million times and we haven't figured out a way to fix it!" [4] [5] [6]

---

[3] See "Towing mishap caught on camera; nearby restaurants say predatory towing been going on for years ", https://www.wbrc.com/2023/01/26/towing-mishap-caught-camera-nearby-restaurants-say-predatory-towing-been-going-years/ WBRC ^ news, January 25, 2023.

[4] See "Birmingham to Air Proposal on Predatory Towing During Wednesday Public Hearing," https://birminghamwatch.org/birmingham-to-air-proposal-on-predatory-towing-during-wednesday-public-hearing/ June 6, 2023.

[5] See "Predatory towing in Birmingham prompts outraged residents to unite on Facebook," https://www.al.com/news/2023/05/predatory-towing-in-birmingham-prompts-outraged-residents-to-unite-on-facebook.html  May 24, 2023.

[6] See " Birmingham to act against 'unscrupulous towing' as driver complaints pour in," https://www.al.com/news/2015/03/birmingham_to_act_against_unsc.html, March 27, 2015.

11

26. Over a decade ago, the Birmingham City Council attempted to address the issues with the pay-to-park lots by enacting ordinances regarding nonconsensual towing and vehicle immobilization to create general operating standards for towing companies as well as limit the charges that a towing company can assess and eliminate predatory booting and towing practices. See City of Birmingham Ordinance No. 13-81, § 12-19-1, *et seq.*

27. The City of Birmingham Ordinance was intended to provide protection both to lot owners and the general public by establishing clear guidelines to private parking lot owners and nonconsensual towing companies.

28. Unfortunately, the changes to the Ordinances and the publicity of PES's nefarious conduct have done nothing to stem Defendants' practices. PES, CRC2, CRC5, Crook, Cullman, Fifth Avenue, Bank of America, Brungart and Fourth and Nineteenth continue to be unjustly enriched by their illegal and unethical towing practices. The public has continued to make complaints, but unfortunately these practices have continued.

29. In 2022, a PES employee shot and killed a man over the towing of his vehicle. Through information and belief, Defendants did not change their business practices and none of the employees were disciplined. Many of the same employees are still employed as parking lot "enforcers" to this day.[7] Defendants have done nothing to address, sanction, or supervise the illegal practices of PES.

---

[7] See "Hey – where's my car? Towing in downtown Birmingham can sometimes result in frightening encounters and online fury," https://www.al.com/news/birmingham/2023/01/hey-wheres-my-car-towing-in-downtown-birmingham-can-sometimes-result-in-frightening-encounters-and-online-fury.html, AL.com, August 30, 2023.

12

30. On or about September 29, 2023, in an attempt to gain control of the pay-to-park fiasco, the City of Birmingham passed Ordinance No. 23-118. This Ordinance amended Chapter 19 of Title 12 of the General Code of the City of Birmingham regarding vehicle immobilization and nonconsensual towing within the city limits of Birmingham, Alabama.

31. The new Ordinance was not a complete re-write of the old Ordinance. For example, § 12-19-84 follows and adopts the previous Ordinance requiring that a written receipt be provided upon payment for towing. The receipt must include specific details, along with an information sheet and card provided by the City, explaining how to file a complaint. Similarly, § 12-19-85(b)(1), of the ordinance limits the amount of fees that can be charged by nonconsensual tow companies to $160.00.

32. The Ordinance was amended to limit the unconscionable result found where a vehicle is towed following an innocent, typographical error. To this end, § 12-19-85(b) states as follows:

> If a vehicle owner or agent thereof can show conclusive proof of payment of parking fees prior to the tow and that the vehicle had not remained beyond the time for which payment was made, then only one-half the rate of the maximum fee for the vehicle's weight classification allowed by subsection (b) of this section may be charged, and upon payment of the charge, the towing service licensee or operator shall release the vehicle as authorized by this article.

13

Said proof can be in the form of a receipt for parking fees or other similar evidence that the vehicle owner paid the parking fees prior to the tow. The evidence must include the location where the vehicle was parked, the tag number of the vehicle, and the period for which the parking fees were paid.

33. Additionally, § 12-19-29 of the Ordinance sought to prevent self-serving corruption and kickbacks by requiring a complete separation, both direct and indirect, of financial relationships between private parking lot owners and nonconsensual towing companies. "It shall be unlawful for any parking lot owner to… have direct or indirect monetary interest in a…towing service that tows or causes the towing of an unauthorized vehicle on the parking lot." See Ordinance 23-118 § 12-19-29(b)(2).

34. Unfortunately, CRC2, CRC5, Crook, Fourth and Nineteenth, Cullman, Brungart, Fifth Avenue and Bank of America continue to profit from PES's towing practices and fail to supervise or take adequate steps to protect the public from unscrupulous and predatory tow companies. The result is that people such as Plaintiffs, Terry White, Justin Mitchell, Kirsten McCorkle, Shawna Ragland, and Timothy Ragland are damaged by Defendants practices.

35. Mr. White, Mr. Mitchell, Ms. McCorkle, Mrs. Ragland, and Mr. Ragland, on behalf of themselves and others similarly situated, seek to redress the illegal and fraudulent tactics of PES, CRC2, CRC5, Crook, Fourth and Nineteenth, Cullman, Brungart, Fifth Avenue and Bank of America.

14

***Plaintiff Terry White's Specific Factual Allegations:***

***--As to PES, CRC 2, LLC and Crook***

36. Because Plaintiff and his wife are elderly, they sought out a parking place close to the restaurant at which they would be dining.

37. At that time, White found and parked his 2016 Toyota Sienna vehicle in the pay-to-park lot located at 2309 2nd Avenue North.   This lot is a short distance from the East West restaurant. The pay-to-park lot is owned and operated by CRC2. According to the Alabama Secretary of State's records, CRC2 is a single member LLC, which is operated and managed by Crook.

38. Plaintiff was initially unsure how to pay for parking, and then saw the "Park Mobile" sign on the lot. Plaintiff downloaded the "Park Mobile App" to his cellphone, followed the instructions identifying his name and email, and inputted his credit card information. Plaintiff paid a total of $12.45 to rent a parking space, thereby reserving the spot for at least three hours of time. PES and CRC2 later identified the address as 2311 3rd Avenue North, Birmingham, Alabama.

39. Plaintiff received an online receipt for the time he had paid to park. After eating dinner, he and his wife returned to the parking lot and found his vehicle was gone. Plaintiff observed that another vehicle was parked in the space where Plaintiff had parked and paid for. Plaintiff asked an attendant in the lot if the attendant

had seen anyone take his van and was told Plaintiff's vehicle had been towed away.

40. Plaintiff immediately contacted the telephone number printed on the "Park Mobile" sign and was provided with the address of the "tow-lot" where his vehicle had been impounded.

41. Plaintiff and his wife were able to obtain a ride to the Defendant PES's tow-lot located at 2608 5th Avenue South, Birmingham, Alabama, to retrieve his van.

42. Through information and belief, Crook is also the owner of the property and lot where the Defendant, PES, operates its tow lot. A portion of PES's business income is paid to Crook in the form of a lease payment each month. Additionally, through information and belief, Mr. Crook leases the property to PES in order to utilize their services as his personal "non-consensual towing company" to service the pay-to-park lots he owns and operates.

43. Upon arrival at PES's tow lot, Plaintiff asked the representative of PES if he had seen the tow truck take his van. Plaintiff was told that PES had towed the van because the van was illegally parked. Plaintiff protested, stating that he had paid with a credit card, input his name and email, and paid for the time. Plaintiff also told the PES representative that Plaintiff had a receipt for the parking, presented the electronic receipt on Plaintiff's cell phone to the PES representative, and requested that PES release his car because Plaintiff had legitimately paid for the parking space and did not exceed the time limit. Representatives from PES refused. Instead, they told him the tag number had been input incorrectly and did

not match the one in the parking App. Plaintiff requested to speak with the owner but was told he could not do so.

44. Plaintiff demanded the return of his vehicle but was refused. Instead, despite Plaintiff having conclusively proven to PES that he had paid to park, Plaintiff was told that the only way he could get his vehicle back would be to pay a fee of $160.00 ($166.40 by credit card), and that Plaintiff must also sign an electronic tablet that contained additional terms and conditions which Plaintiff could not see and had never originally agreed to when he initially rented the parking space.

45. When Plaintiff asked PES what they were requiring him to sign, Plaintiff was told it was just a statement saying that he had picked up the vehicle. To the contrary, the signature pad actually set forth a document with "additional terms and conditions" which were never communicated to the Plaintiff at the time he paid to park his vehicle. PES effectively used its hostile control of the vehicle to force the Plaintiff, a 71-year-old man, to agree to terms, conditions, and factual averments that he did not agree to.

46. Before he signed the pad or paid the money, Plaintiff again politely asked PES' representatives numerous times if he could simply pay the required money and just retrieve his vehicle. Each time he was told "No" – Plaintiff had to pay a $166.40 fee and sign the electronic pad. The Plaintiff repeatedly asked if he could obtain a copy of what he was being forced to sign but each time was told "No." The representative from PES refused to release Plaintiff's vehicle, stating that Plaintiff would have to pay the full towing fee of $166.40.

17

47. Plaintiff requested that he be provided a refund of the money, or a portion of the money, he had initially paid to park, but PES refused.

48. Late at night and requiring transportation to go home, Plaintiff was effectively left with no choice but to sign the electronic pad "under duress" and pay the fees. At no time was Plaintiff provided a copy of the terms and conditions he signed. Plaintiff was not provided a receipt from PES that complied with City of Birmingham Ordinances.

49. In doing the acts alleged above and herein, PES, CRC2, and Crook violated City of Birmingham Ordinances including Ordinance No. 13-81 and Ordinance No 23-118, as amended, including but not limited to, the following ways:

    a. PES violated § 12-19-85(h) by charging the Plaintiff in excess of the permitted fee when he provided proof in the form of the receipt from the Park Mobile App showing that he had paid to park prior to the towing. Under § 12-19-85(h) PES was limited to charging one-half of the maximum fee of $160.00 as set forth in § 12-19-85(a) and (b).

    b. PES violated §12-19-84 by failing to provide the Plaintiff with a written receipt containing the following information:

        (1) The name and address of the towing and recovery licensee;

        (2) The address from which the vehicle was towed;

        (3) The date and time that the vehicle was towed;

18

(4) The date and time that the vehicle entered the facility at which it was placed for storage;

(5) An itemized list of all the fees that are being charged;

(6) A signature of an authorized representative of the towing and recovery licensee; and,

(7) PES failed to provide the Plaintiff with an information sheet or card supplied by the City of Birmingham, regarding information about how to file a complaint with the City.

c. Through information and belief, Crook and CRC2 violated §12-19-29(b)(2) which prohibits a parking lot owner from having a direct or indirect monetary interest in PES by both leasing the property located at 2608 5th Avenue South, Birmingham, Alabama 35233 to PES and providing financial incentives to PES to tow vehicles from pay-to-park lots owned and/or managed by Robert Crook.

d. PES violated § 12-19-41 and § 12-19-42 by failing to comply with the above regulations and establishing policies and/or taking action to discourage, prevent, or correct violations by its tow truck drivers and employees.

e. PES and CRC2 violated § 12-19-50 by requiring that the Plaintiff sign an electronic pad that Plaintiff could not read or understand what he was signing, was not provided a copy of acknowledging why his vehicle was towed, and was not provided to the Plaintiff clearly and in a form he could read and understand prior to the agreement to park.

19

***Plaintiff Justin Mitchell's Specific Factual Allegations:***

***--As to PES, Cullman, Bank of America, Brungart, Fourth and***

***Nineteenth,  and Crook--***

50. On or about the evening of December 14, 2023, Plaintiff and his wife visited downtown Birmingham, Alabama.

51. At that time, they found and parked their 2019 Honda Pilot vehicle in the pay-to-park lot located at 1831 4th Avenue North in downtown Birmingham, Alabama.

52. The pay-to-park lot is owned and operated by Cullman, Brungart, Fourth and Nineteenth and Bank of America.

53. Plaintiff saw a sign in the lot explaining how to pay to park, Plaintiff downloaded the App to his cellphone, followed the instructions identifying his name and email, and inputted his vehicle and credit card information. Plaintiff paid a total of $25.90 to rent a parking space, thereby reserving the spot for at least three hours of time.

54. Plaintiff received an online receipt from the App for the time he had paid to park. Upon returning to the parking lot, he and his wife discovered their vehicle was gone.

55. Plaintiff immediately contacted the telephone number printed on the sign, but that number was not working.

56. Because the posted number was not working, Plaintiff's wife had to call the Birmingham Police to find out where their car was towed.

57. Plaintiff and his wife were informed that their vehicle was at Defendant PES's tow-lot located at 2608 5th Avenue South, Birmingham, Alabama.

58. Upon arrival at PES's tow lot, Plaintiff observed a long line of people waiting to pay to get their vehicles back. Plaintiff spoke with a PES representative, and was not allowed to see his vehicle until he had paid the full price of $160.00, despite Plaintiff conclusively proving to PES that he had paid to park. Plaintiff was also forced to sign an electronic "pad" with new terms and conditions that were not part of the original contract entered into with the App to rent the parking space before he could see his car.

59. Plaintiff was never informed by PES what they were requiring him to sign. Through information and belief, the signature pad set forth a document with "additional terms and conditions" which were never communicated to the Plaintiff at the time he paid to park his vehicle. PES effectively used its hostile control of the vehicle to force the Plaintiff to agree to terms, conditions, and factual averments that he did not agree to.

60. After paying the fee required by PES and signing the electronic pad, Plaintiff was still forced to wait to retrieve his car until everyone else in line had paid and signed the electronic pad.

21

61. Late at night and requiring transportation to go home, Plaintiff was effectively left with no choice, but to sign the electronic pad "under duress" and pay the fees. At no time was Plaintiff provided a copy of the terms and conditions he signed. Plaintiff was not provided a receipt from PES that complied with the City of Birmingham ordinances.

62. In doing the acts alleged above and herein, PES, Fourth and Nineteenth, Cullman, Brungart, and Bank of America violated the City of Birmingham ordinances including Ordinance No. 13-81 and Ordinance No 23-118, as amended, in at least the following ways:

   a. PES violated § 12-19-85(h) by charging the Plaintiff in excess of the permitted fee when he provided proof in the form of the receipt from an App showing that he had paid to park prior to the towing. Under § 12-19-85(h) PES was limited to charging one-half of the maximum fee of $160.00 as set forth in § 12-19-85(a) and (b).

   b. PES violated §12-19-84 by failing to provide the Plaintiff with a written receipt containing the following information:

   (1) The name and address of the towing and recovery licensee;

   (2) The address from which the vehicle was towed;

   (3) The date and time that the vehicle was towed;

   (4) The date and time that the vehicle entered the facility at which it was placed for storage;

22

(5) An itemized list of all the fees that are being charged; and,

(6) A signature of an authorized representative of the towing and recovery licensee.

(7) PES failed to provide the Plaintiff with an information sheet or card supplied by the City of Birmingham, regarding information about how to file a complaint with the City.

c.  PES violated § 12-19-41 and § 12-19-42 by failing to comply with the above regulations and establishing policies and/or taking action to discourage, prevent, or correct violations by its tow truck drivers and employees.

d.  PES and the Lot Owners violated § 12-19-50 by requiring the Plaintiff sign an electronic pad that was not provided in a form he could read and understand before agreeing to park and which contained additional terms and conditions that he had not agreed to at the time of paying to park.

### *Plaintiff Kirsten McCorkle's Specific Factual Allegations*

### *As to PES, CRC 5, and Crook*

63. On or about the evening of June 11, 2022, Plaintiff visited downtown Birmingham, Alabama.

64. At that time, she found a spot and parked her 2016 Lexus GX460 vehicle in the pay-to-park lot located at 2130 2nd Ave North Birmingham, Alabama. The pay-to-park lot is owned and operated by CRC5. According to the Alabama Secretary of State's records, CRC5 is a single member LLC, which is managed by Crook.

23

65. Plaintiff was initially unsure how to pay for parking, and then saw the "Park Mobile" pay machine. Plaintiff attempted to pay at the machine both by cash and through credit card, but the machine was not working. Plaintiff downloaded the "Park Mobile App" to her cellphone, followed the instructions identifying her name and email, and inputted her credit card information. Plaintiff paid a total of $9.35 to rent a parking space reserving that spot until 6 A.M. the next day.

66. Plaintiff received an online receipt for the time she had paid to park on her email. While Plaintiff's car was parked, she observed approximately seven other cars being towed from the same lot. Upon returning to the lot to retrieve her car, Plaintiff noticed that her car had also been towed.

67. Plaintiff discovered that PES had towed her vehicle, and it was at the PES lot located at 2608 5th Avenue South, Birmingham, Alabama.

68. Plaintiff was able to obtain a ride to the PES lot to recover her vehicle. Upon arrival at the lot, she spoke with a PES employee who told her that she was not the first person to be towed that night who had paid to park. Plaintiff produced her receipt showing that she had paid to park but was still charged the full $166.40 to recover her vehicle because the PES employee told her they were unable to see the information from the parking app.

69. Plaintiff was also forced to sign an electronic pad with further terms and conditions that she had not originally agreed to when she paid to park in the lot before she could see her car or recover it from PES.

24

70. When Plaintiff arrived home, she realized that her payment had been removed from the history on Park Mobile, but she still had her email receipt for the time she rented the parking space.

71. Because PES towed her vehicle, Plaintiff had to have her tires realigned and balanced the next day to fix issues with her vehicle.

72. In doing the acts alleged above and herein, PES, CRC5, and Crook and the other Lot Owners violated the City of Birmingham ordinances including Ordinance No. 13-81, as amended, in at least the following ways:

    a. PES violated § 12-19-85(h) by charging the Plaintiff in excess of the permitted fee when she provided proof in the form of the receipt from the Park Mobile App showing that she had paid to park prior to the towing. Under § 12-19-85(h) PES was limited to charging one-half of the maximum fee of $160.00 as set forth in § 12-19-85(a) and (b). (Ordinance 13-81, which permits PES to charge the full $160.00 towing fee even when Plaintiff can demonstrate having paid, is unconscionable. This ordinance allows PES to act in bad faith by towing individuals they either knew or should have known paid to park.)

    b. PES violated §12-19-84 by failing to provide the Plaintiffs with a written receipt containing the following information:

        (1) PES failed to provide the Plaintiff with an information sheet or card supplied by the City of Birmingham regarding information about how to file a complaint with the City.

    c. PES violated § 12-19-41 and § 12-19-42 by failing to comply with the above

regulations and establishing policies and/or taking action to discourage, prevent, or correct violations by its tow truck drivers and employees.

d.  PES, Crook, CRC 5 and the other Lot Owners violated § 12-19-50 by requiring that the Plaintiff sign an electronic pad that Plaintiff could not read or understand what she was signing, was not provided a copy of acknowledging why her vehicle was towed and was not provided to the Plaintiff clearly, and in a form, she could read and understand prior to the agreement to park.

### *Plaintiffs Shawna Ragland and Timothy Ragland's Specific Factual Allegations As to PES and Fifth Avenue*

73. In October of 2022, Plaintiff, Shawna and Timothy Ragland parked their car at the Liv on 5th parking lot located at 2200 5th Avenue South in Birmingham, Alabama.

74. Plaintiff pays a monthly fee to her employer, UAB, to reserve a parking spot in that lot for work. Those who park in this lot are given a tag to hang from their vehicle's rearview mirror to show that they have paid. This tag is provided by the lot owner. The tag that the Plaintiff was given to park in this lot was broken and held together with zip ties.

75. The weekend prior to being towed, Plaintiff had purchased a new vehicle. Although Plaintiff's vehicle was new and still had a dealer tag, she had the parking tag clearly displayed in her vehicle.

26

76. Plaintiff had contacted the parking representative about getting a new tag to display in her new car the same day she was towed because her tag was broken and would not stay on the rearview mirror.

77. The lot had a machine to check the parking tags of those authorized to park, but it was not working at the time. Plaintiff properly displayed her parking tag in the rearview mirror and went into work. Because of the condition of her parking tag, the tag fell off the mirror and landed in plain view on the center console.

78. Upon returning to the parking lot, Plaintiff discovered that PES had towed her vehicle, and it was at the PES lot located at 2608 5th Avenue South, Birmingham, Alabama.

79. Plaintiff was able to obtain a ride to the PES tow lot from her husband, Timothy, to recover her vehicle. Upon arrival at the PES lot, there was no one employee present at the lot, so Plaintiff had to contact PES by telephone and wait for someone to come and take her payment before she could recover her vehicle.

80. Upon payment for her vehicle, PES did not give Plaintiff anything in writing about how to file a complaint with the City of Birmingham or allow her to dispute the charges.  Instead, Plaintiff was forced to agree to terms and conditions she never agreed to at the time she acquired the permit to park.

81. In doing the acts alleged above and herein, PES and Fifth Avenue violated City of Birmingham Ordinances including Ordinance No. 13-81, as amended, in the following ways:

a.  Ordinance §13-81, which limits PES charges to one-half the $160.00 towing fee when Plaintiff can demonstrate having paid. PES acted in bad faith by towing individuals they either know or should have known had paid to park and charging the full fee.

b.  Towing vehicles when information was available to PES and Fifth Avenue that the owner/operator of the vehicle had a lawful basis to park there and was not in violation of any agreement.

c.  PES violated §13-81, *et seq.* and §12-19-84 by failing to provide the Plaintiffs with a written receipt containing the following information:

    (1) PES failed to provide the Plaintiff with an information sheet or card supplied by the City of Birmingham, regarding information about how to file a complaint with the City.

d.  PES and Fifth Avenue violated § 12-19-41 and § 12-19-42 by failing to comply with the above regulations and establishing policies and/or taking action to discourage, prevent, or correct violations by its tow truck drivers and employees.

e.  PES and Fifth Avenue violated § 12-19-50 by requiring that the Plaintiff sign additional terms and conditions not part of the original contract to park and that Plaintiff could not read or understand what she was signing, was not provided a copy of acknowledging why her vehicle was towed and was not provided to the Plaintiff clearly and in a form she could read and understand prior to the agreement to park.

28

## CLASS ALLEGATIONS

82. Plaintiffs bring this action individually and on behalf of all others similarly situated, under Rule 23 of the Alabama Rules of Civil Procedure.

83. The class of persons represented by Plaintiffs in this action is defined as:

**Class member definition group number 1:**

From February 27, 2018 until present all owners/operators as defined in Birmingham City Municipal Ordinance No(s). 13-81, et seq.; and 23-118, who had a vehicle towed by PES but were not provided with a written receipt in conformance with the City of Birmingham Municipal Ordinance No 13-81, 23-118, §§12-19-1, *et seq*.

**Class member definition group number 2:**

From February 27, 2018, to present, all persons who paid for parking at one of Defendants' pay-to-park lots whose vehicle was towed by PES and who were forced to sign additional terms and conditions in order to retrieve their vehicle which were not part of the original agreement to park.

**Class member definition group number 3:**

From February 27, 2018, to present, all persons who paid for parking at Defendants' CRC2, ROBERT CROOK, CRC5, CULLMAN PROPERTY COMPANY, BANK OF AMERICA as trustee for

29

Margaret Gaston, BRUNGART, FOURTH AND NINETEENTH and FIFTH AVENUE pay-to-park lots in Birmingham, Alabama whose vehicle was towed, and whose original parking fee was unjustly kept by CRC2, CRC5, Robert Crook, Fifth Avenue Holdings, Inc., Bank of America as Trustee for Margaret Gaston, Brungart Properties, II, LLC, Fourth and Nineteenth, and Cullman Property Co.

**Class member definition group number 4:**

From September 30, 2023, to present, all persons who can show conclusive proof of payment for parking fees private pay-to-park lots but who were towed by PES and/or from Defendants' pay to park lots who were charged over and above the maximum statutory towing fee allowed pursuant to the City of Birmingham Ordinance No. 23-118 § 12-19-85(h).

**Class member definition group number 5:**

All vehicle owners/operators whose vehicles were towed by PES and/or from Defendants' pay-to-park lots in Birmingham, AL from September 30, 2023 to present who attempted to contact PES but could not do so because the information on the sign was incorrect or the phone was inoperable. As the result of Defendants' tortious and illegal conduct, Plaintiffs, and the class of persons they seek to represent, are entitled to recover damages from Defendants.

84. Defendants engaged in standardized policies and practices with respect to Plaintiffs and the members of the proposed class, including but not limited to:

Violations of the City of Birmingham Ordinance Nos. 13-81 and 23-118, through Defendants' illegal collection of fees in excess of statutory maximums, failure to comply with regulations regarding provision of written documentation following nonconsensual vehicle towing, and collusion between the parties to violate the Ordinances for his, its, and their own benefit.

85. The class can be readily identified using Defendants' records[8], maintained by Defendants and/or their employees, representatives, or agents.

86. The class is so numerous that joinder of all class members is impracticable. The precise number of class members and their addresses are unknown to Plaintiffs; however, they are readily available from Defendants' records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

87. This action involves questions of law and fact common to the class which predominate over questions affecting individual class members.

88. Plaintiffs' claims are typical of the claims of the class because, among other things, Plaintiffs, like the other members of the class, were subjected to Defendants' illegal conduct, including but not limited to, the towing and withholding of

---

[8] City of Birmingham Municipal Ordinance No. 13-81, §12-19-1, *et seq* and its amendment 23-118 requires Defendants maintain these records.

Plaintiffs' and individual class members' vehicles for which Defendants did not have a valid reason to do so.

89. Plaintiffs have displayed an interest in vindicating the rights of the class members and will fairly and adequately protect and represent the interests of the class. Plaintiffs are represented by skillful and knowledgeable counsel. Plaintiffs' interests do not conflict with those of the class and the relief sought by Plaintiffs will inure to the benefit of the class generally.

90. The questions of law and fact that are common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the class members and Defendants.

91. Defendants' actions are generally applicable to the class as a whole and to the Plaintiffs. For example, the class members can prove the elements of their negligence, conversion, trespass, unjust enrichment, and requests for injunctive relief on a class-wide basis using the same evidence that Plaintiffs would use to prove those claims in an individual civil action.

92. Additionally, the damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be required to individually litigate each of the class member's claims against the Defendants. It would be impractical for the class members to individually seek redress for Defendants' wrongful conduct.

32

93. Even if the members of the class could afford individual litigation, given the expected size of the class, separate litigation of each class member's claims against Defendants would create the potential for inconsistent and/or contradictory judgments, and cause delay and increase the expenses for the parties and the Court in adjudicating the claims against Defendants. Conversely, a class action will prevent far fewer management difficulties, provide the benefits of a single adjudication, conserve time, effort, and expense, employ comprehensive and cohesive supervision by a single court, and provide a forum for small Plaintiffs.

94. Separate actions on these claims could subject the Defendants to inconsistent adjudications that could result in an unclear and potentially contradictory standard for the duties and expectations that Defendants will be subject to. A single class action of these claims will create a clear and unambiguous standard for the Defendants, every other parking lot owner, and other nonconsensual towing companies to follow while also creating a clear precedent for future court action. Moreover, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

95. Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the class as a whole.

96. Any difficulties in management of this case as a class action are outweighed by the benefits that a class action has to offer with respect to disposing of common issues of law and fact on issues affecting a large number of litigants.

97. Plaintiffs' claims are typical of the class as a whole, and Plaintiffs are capable of, and willing to, represent the other members of the class.

98. In each of the Counts below, Plaintiffs incorporate and adopt each of the above and the foregoing allegations as fully set forth therein.

## CLASS EXCLUSIONS

99. Subject to additional information obtained through further investigation and discovery to be conducted, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the class definition and this action are the Defendants, their officers, directors, agents, trustees, partners, joint ventures, or entities controlled by the Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendants and/or their officers and/or directors, or any of them; Class Counsel, the Judge assigned to this action, and any member of the Judge's immediate family; as well as any individual party including their counsel involved in prior or current litigation against the Defendants. This includes litigation

34

which has either been reduced to a settlement agreement and/or judgment rendered or any litigation involving personal injury and/or wrongful death.

## CLASS CLAIMS

## COUNT ONE: NEGLIGENCE, NEGLIGENCE PER SE, WANTONNESS

### --AS TO ALL DEFENDANTS--

100. Plaintiffs adopt and reallege all of the factual averments contained in the preceding paragraphs as if fully set forth herein.

101. Defendants owed the Plaintiffs, and the class of individuals they seek to represent, a duty not to be wanton and/or negligent in Defendants' conduct both in their dealings with the Plaintiffs and members of the class they seek to represent.

102. Defendants breached said duties to the Plaintiffs, and the class of individuals they seek to represent, and were wanton, negligent, and/or negligent per se including but not limited to, the following:

   a. Defendants have engaged in multiple violations of the City of Birmingham Ordinance Nos. 13-81 and 23-118, §12-19-1 *et. seq.*, by engaging in the unauthorized towing of class members' vehicles in violation of the City of Birmingham Ordinance record keeping and disclosure rules, and the charging of illegal fees for towing vehicles without a right to do so;

35

b.  Defendants' theft and trespass of the Plaintiffs' and class members' vehicles;

c.  Defendants' ratification of the theft and/or conversion of both Plaintiffs' and proposed class members' vehicles;

d.  Defendants' unjust enrichment as a result of retaining Plaintiffs' and class members' payment to park;

e.  The breach of the expressed and implied contract to park;

f.  Defendants' unjust enrichment of towing fees;

g.  As a direct result, Plaintiffs and class members suffered, loss of monies, loss of use of their automobiles, damage to their automobiles, and incidental and consequential damages.

103.  Defendants, working collectively or as agents of each other, breached the duties they owed to Plaintiffs and the class members. Such breaches arose out of the negligent and/or wanton conduct of the Defendants and those who acted in concert and/or conspiracy with the other Defendants or acted as their agents, servants, or employees while in line and scope of Defendants' business, contractual, statutory, and regulatory duties. Defendants breached said duties owed to Plaintiffs.

WHEREFORE, Plaintiffs, on behalf of the putative class, request that the Court award statutory, actual, and punitive damages in an amount appropriate to compensate them, and the class of individuals they seek to represent, for the loss of monies, loss of use of their automobiles, incidental and consequential damages,

punitive damages to ensure deterrence of Defendants' said misconduct in the future, as well as costs of this proceeding and attorneys' fees in an amount a jury may deem appropriate.

## COUNT TWO: NEGLIGENT HIRING, TRAINING, RETENTION AND NEGLIGENT SUPERVISION

### *--AS TO ALL DEFENDANTS--*

104.    Plaintiffs adopt and reallege all of the factual averments contained in the preceding paragraphs as if fully set forth herein.

105.    Defendants owed Plaintiffs, and the class of individuals they seek to represent, a duty of reasonable care in Defendants' conduct as to Plaintiffs and class members and in the training and supervision of Defendants' employees. Said employees should perform services in full compliance with the laws of the State of Alabama and City of Birmingham as well as all local regulations and ordinances. Defendants should not engage or allow said agents to engage in the wrongful practices herein alleged. Defendants should not suppress or conceal such activities or enable said agents to do so. Defendants were negligent in not terminating or otherwise disciplining those employees or agents known to have violated Defendants' company policies, state laws, or local regulations by engaging in the misconduct herein alleged.

37

106.   Defendants owed duties to Plaintiffs, and the class of individuals they seek to represent, in putting forth trained, skilled, loyal, honest, and fair dealing employees or agents who act in compliance with City, State, and other local laws regarding the operation of private pay to park lots in the downtown Birmingham area, as well as the towing of unauthorized automobiles from private parking lots. Defendants owed a duty of good faith to Plaintiffs, and class members, pursuant to the City of Birmingham Ordinances, Alabama laws, and local statutes and regulations governing private parking lot owners, and towing and recovery companies. Defendants further owed Plaintiffs, and the class members they seek to represent, the duty of full compliance with the City of Birmingham Ordinance Nos. 13-81 and 23-118.

107.   Defendants' negligent retention of employees known to have engaged in the misconduct described herein acts as ratification of such misconduct.

108.   Defendants knew, or should have known, of the wrongful practices engaged in by Defendants' employees or agents, and that Defendants' own training, supervision, and retention practices were inadequate to fulfill obligations to protect the public. Defendants knew, or should have known, that the policies and practices in training, supervising, and retaining such employees were inadequate to prevent or detect the misconduct described herein. Such inadequate policies and practices were the actual and direct cause of Plaintiffs' and class members' aforementioned and extensive injuries.

38

109. Plaintiffs, and the class of individuals they seek to represent, incurred damages directly caused by Defendants' negligent conduct, negligence in training, supervising, and retaining employees and/or agents.

WHEREFORE, Plaintiffs request that this Court award damages in an amount appropriate to compensate them, and the class of individuals they seek to represent, for the loss of monies, loss of use of their automobiles, incidental and consequential damages, interest as well as punitive damages to ensure deterrence of Defendants misconduct in the future, as well as costs of this proceeding and attorneys' fees in an amount a jury may deem appropriate.

## COUNT THREE: TRESPASS/TRESPASS TO CHATTELS

### *--AS TO ALL DEFENDANTS--*

110. Plaintiffs repeat each and every allegation contained in the paragraphs above and below and incorporates such allegations by reference.

111. Defendants PES with CRC2, CRC5, Cullman, Fifth Avenue, Fourth and Nineteen, Brungart and Bank of America intentionally and continuously interfered with Plaintiffs' and potential class members possessory and ownership interests in their property by either: wrongly asserting dominion over their vehicles, taking their vehicles without permission, refusing to return their vehicles even after any payments owed were tendered, making them pay monies over and above what were legally allowed, and/or by making them agree to terms

39

and conditions that were not allowed under law and not agreed when the contract to park was formed.

112.    Plaintiffs collectively assert their claim against PES and the other defendants on behalf of themselves and every class member they seek to represent including other class representatives.

113.    Defendants interfered with Plaintiffs' possessory and ownership rights over their vehicle by either wrongfully towing Plaintiffs' vehicles, towing vehicles after the Plaintiffs had paid to reserve a spot and/or  ratifying the towing of Plaintiffs' vehicles while they were parked in a spot they had reserved without Plaintiffs' permission.

114.    Alternatively, or in addition to, Defendants wrongfully asserted dominion over Plaintiffs' vehicles by either:  (1) forcing Plaintiffs to pay above and beyond the amount allowed by ordinance and refusing to return the vehicle without Plaintiffs first paying an amount that was double what was allowed, and/or (2) by forcing Plaintiffs to sign additional terms and conditions that were not originally agreed to, by continuing to hold the vehicle until such time as Plaintiffs signed and paid.

115.    Said Trespasses to Chattels was intentional and insulting and has caused Plaintiffs to suffer financial losses and injury. PES, CRC2, CRC5, Crook, Cullman, Brungart, Fourth and Nineteenth, Fifth Avenue and Bank of America wrongfully deprived the Plaintiffs of their full interest in their vehicles and caused damages. PES, CRC2, CRC5, Cullman, Brungart, Fourth and Nineteenth, Fifth Avenue and Bank of America carried out this conduct for their own use and benefit, without

40

lawful justification, and without a lawful right.

116.  As a result of Defendants' intentional, willful, wanton, and reckless conduct, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs, and the class members they seek to represent, demand judgment against Defendants for actual damages, punitive damages, attorneys' fees, costs of this action, and other and further relief as the Court deems just and proper.

## COUNT FOUR: MALICIOUS AND WILLFUL CONVERSION/CIVIL THEFT

### --AS TO ALL DEFENDANTS--

117.  Plaintiffs repeat each and every allegation contained in the paragraphs above and below and incorporate such allegations by reference.

118.  Defendants' actions amount to (a) the appropriation of the Plaintiffs' personal property to their own use and benefit, as well as that of the individual class members they seek to represent; (b) wrongful exercise and/or dominion over the personal property of the Plaintiffs and class members; and (c) the withholding of possession of the property of Plaintiffs and class members.

119.  The Defendants' conduct was willful, intentional, malicious, insulting, and oppressive.

120. As a proximate result, Plaintiffs, and the class they seek to represent, have been caused to suffer loss of use of their property, loss of monies, incidental and consequential damages, and loss of interest.

121. Plaintiffs assert their claim on behalf of themselves and those similarly situated, including other class representatives, against PES and all the Lot Owners and asserts these claims on behalf of themselves and others similarly situated individuals that parked in the Defendants' pay-to-park lots.

122. PES, and the Lot Owners, wrongfully appropriated and asserted dominion over Plaintiffs vehicles by either wrongfully removing the vehicle from the parking space that Plaintiffs had paid to reserve, requiring Plaintiffs to pay a fee in excess of the amount allowed by the city ordinances, and/or by requiring Plaintiffs to sign additional terms and conditions before they would give Plaintiffs their property back.

123. Defendants, PES and Lot Owners, are liable to Plaintiffs for their claims because (1) Defendant Lot Owners retained and authorized PES to take these actions, and (2) Defendant Lot Owners, PES, CRC2, CRC5, Crook, Cullman, Brungart, Fourth and Nineteenth Fifth Avenue and Bank of America, have ratified the actions of PES by allowing them to continue these acts even after numerous complaints to both PES and the City of Birmingham.

WHEREFORE, Plaintiffs and the class they seek to represent request that this Court award them damages necessary to compensate them for the fair rental value of their property during the time and place of conversion, loss of use of their

42

personal property at the time and place of conversion, cost of recovery of their property, plus statutory interest from the time of conversion, including costs of this action and attorneys' fees, plus punitive damages to deter said conduct in the future.

## COUNT FIVE: UNJUST ENRICHMENT

### --AS TO ALL DEFENDANTS--

124.    Plaintiffs hereby adopt and incorporate all preceding paragraphs as if fully stated herein.

125.    Defendants received a benefit at the expense of the Plaintiffs and the class members they seek to represent. By illegally taking the automobile and personal property of the Plaintiffs, and the class of individuals they seek to represent, Defendants received unlawful monies and profits.

126.    It is unjust and inequitable to permit Defendants to retain the benefits they have obtained through their unlawful scheme of taking and converting the property of the Plaintiffs and class members and effectively holding property for ransom until they consent to PES's new and separate terms and conditions. The financial benefits obtained by Defendants should not, in fairness, be retained but rather should be disgorged and returned to Plaintiffs and class members.

127.    Plaintiffs bring this claim on behalf of themselves and those similarly situated, including other class representatives, against PES and brings this claim against

43

Defendants CRC2, CRC5, Crook, Cullman, Brungart, Fourth and Nineteenth and Bank of America on behalf of themselves and those similarly situated that parked in the above Defendant, Lot Owners' pay-to-park lots.

128. PES wrongfully towed and converted Plaintiffs' vehicles. Because PES wrongfully towed and retained the vehicles and/or illegally charged fees in excess of the amount allowed by ordinance, PES received and retained unlawful monies.

129. It would be unjust and inequitable to allow PES to retain the profits received and retained because of their wrongful and illegal actions in towing, storing and releasing Plaintiffs' vehicles.

130. Defendant Lot Owners, CRC2, CRC5, Crook, Cullman, Brungart, Fourth and Nineteenth, Fifth Avenue and Bank of America, retained PES and authorized them to tow vehicles from Defendants' pay-to-park lots. Defendant Lot Owners directly profit from PES's wrongful and illegal towing and holding of vehicles.

131. When PES tows a vehicle from the Defendants' pay-to-park lots, Defendants, PES, CRC2, CRC5, Crook, Cullman, Brungart, Fifth Avenue, Fourth and Nineteenth and Bank of America, have no system in place to restrict renting of the parking space that have been previously reserved. By renting out parking spaces that had been previously paid for and reserved during that time by an owner whose car had been wrongfully and/or illegally towed or withheld, Defendants are obtaining increased profits by re-renting the space already reserved for the vehicle wrongfully or illegally towed.

132. It would be unjust and inequitable to allow Defendants to retain the profits

44

made by renting a space already reserved for a vehicle that had been wrongfully or illegally towed.

133.   As a direct and proximate result of the inequitable conduct of Defendant Lot Owners and PES, their agents and/or employees, Plaintiffs, and the class, have suffered damages, including monetary loss, overcharges of both rent and convenience fees, and incidental and consequential damages.

WHEREFORE, Plaintiffs, and the class they seek to represent, request that the Court award damages, punitive damages, costs, and attorneys' fees, in an amount the Court deems appropriate to compensate Plaintiffs, and the class they seek to represent, for their loss of monies, loss of property, incidental and consequential damages, and interest in an amount to be determined by the Court.

## COUNT SIX: INJUNCTIVE AND EQUITABLE RELIEF

### *--AS TO ALL DEFENDANTS--*

134.   Plaintiffs hereby adopt and incorporate all the preceding factual averments as if fully set forth herein.

135.   Plaintiffs and the class they seek to represent will continue to suffer irreparable injury unless the alleged conduct of the Defendants is halted, and the Defendants are educated, trained, and made to comply with the City of Birmingham Ordinances 13-81, § 12-19-1, et seq. and its amendment 23-118 as well as the laws of the State of Alabama.

45

136. Plaintiffs specifically request that the Defendants be required, enjoined, and ordered to provide notice, as required under the City of Birmingham Ordinance Nos. 13-81 and 23-118, § 12-19-74, to all persons whose vehicle has been towed by PES and that all future towing by PES comply with the requirements of the statute as well as contain the receipts and notices as required by the statute.

137. Plaintiff Justin Mitchell brings a separate claim for equitable relief against PES and Defendants Cullman, on behalf of himself and others similarly situated, whose vehicles had been towed by PES and called a number posted in the pay-to-park lot with a number that did not work.

138. PES and violated City of Birmingham Ordinances 13-81 and 23-118, § 12-19-1, et seq by not maintaining a sign with a correct phone number that is answered 24 hours a day 7 days a week. Plaintiff and others similarly situated will continue to suffer the consequences of PES's failure to maintain their signs and phone number unless the alleged conduct of PES is halted.

139. Plaintiffs specifically request that the Defendants CRC2, CRC5, Crook, Cullman, Brungart, Fourth and Nineteenth and Bank of America and PES be required, enjoined, and ordered to (1) maintain their non-consensual towing signs, as required under 3-81 and 23-118, § 12-19-1, et seq, (2) hire and allow an independent third party to monitor PES's compliance with those ordinances, (3) give a report to the Birmingham City Counsel on the independent third parties findings semi-annually.

46

**RELIEF REQUESTED**

140. DAMAGES. As a direct and/or proximate result of wrongful actions and/or inaction, as described herein, Plaintiffs and class members suffered, and continue to suffer, damages in the form of, *inter alia*: (i) the untimely and/or inadequate notification of their rights under The General Code for the City of Birmingham Ordinance Nos. 13-18, 23-118, § 12-19-1 et seq.; (ii) fair rental value of Plaintiffs' and class members' automobiles during the time and place of conversion; (iii) loss of use of Plaintiffs' and class members' vehicles; (iv) out-of-pocket expenses incurred to mitigate their damages due to the improper towing, improper disclosures, and trouble pressed upon them by the Defendants' conduct; (v) the value of their time spent mitigating damages and learning their rights; (vi) monies unjustly retained by Defendants; and (vii) interest from the date and time of the taking of said monies.

141. EXEMPLARY DAMAGES. Plaintiffs and class members are entitled to exemplary damages as punishment and to deter such wrongful conduct in the future.

142. INJUNCTIVE RELIEF. Plaintiffs and class members are also entitled to injunctive relief in the form of, without limitation, (i) requiring PES to, *inter alia*, immediately disclose and provide a written receipt and notice to Plaintiffs and class members as required under the City of Birmingham Ordinance Nos. 13-81 and 23-118, § 12-19-1, *et seq.*; (ii) issue a permanent injunction enjoining PES in the future from requiring the signing of additional terms not previously agreed to

47

and not required under the above statutes; (iii) requiring PES submit to periodic compliance audits by a third party regarding the implementation of and compliance with such policies and procedures; and (iv) forward a copy of these proceedings and findings to the Birmingham City Counsel to review as part of the continued licensing of PES.

WHEREFORE, Plaintiffs, on behalf of themselves and class members, respectfully request that (i) Defendants CRC2, CRC5, Crook, Cullman, Brungart, Fourth and Nineteenth and Bank of America and PES appear and answer this amended complaint; (ii) this action be certified as a class action; (iii) Plaintiffs be designated the Class Representatives; and (iv) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, on behalf of themselves and class members, further request that upon final trial or hearing, judgment be awarded against the Defendants in favor of Plaintiffs and class members, for: (i) actual damages, consequential damages, and/or nominal damages, as described above, in an amount to be determined by the trier of fact; (ii) exemplary damages; (iii) injunctive relief as set forth above; (iv) pre- and post-judgment interest at the highest applicable legal rates; (v) costs of suit; (vi) award attorneys' fees; and (vii) such other and further relief that this Court deems just and proper.

Respectfully submitted, on this the 18th day of April, 2025.

*/s/ Michael E. Parrish*
Michael E. Parrish
Thomas C. Donald
David A. Holcombe

48

Alabama Car Lawyers, LLC
231 Twenty Second Street South
Suite 203
Birmingham, AL 35233
Phone: 205 547 5747
       205 582 4649
Email: mparrish@alabamacarlaw.com
      cdonald@alabamacarlaw.com
      dholcombe@alabamacarlaw.com

/s/ Rhonda Steadman Hood
Rhonda Steadman Hood HOO024
HOOD LAW, LLC
1117 22nd Street South
Birmingham, AL 35205
Phone: 205 323 4123
Email: rhonda@whlfirm.com

PLEASE SERVE THE DEFENDANTS AT THE FOLLOWING ADDRESSES:

Bank of America, NA
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Brungart Properties II, LLC
c/o Newton R. Brungart, Jr.
2849 Shook Hill Road
Birmingham, AL 35223

CRC 5, LLC
c/o Robert L. Crook, Jr.
2421 2nd Avenue North
Birmingham, AL 35203

Cullman Property Co.
c/o Arnold Steiner
P.O. Box 531065
Birmingham, AL 35253-1065

Fifth Avenue Holdings, LLC
2 North Jackson Street, Suite 605

49

Montgomery, AL 36104

Fourth and Nineteenth, LLC
c/o Matthew Akin
402 Office Park Drive, Suite 150
Birmingham, AL 35223


## CERTIFICATE OF SERVICE


I hereby certify that the above and forgoing has been served upon counsel for the Defendants this the 18th day of April, 2025 by utilizing Alabama's AlaFile electronic filing system.

Paul Miller
Kymberly Porter
pmiller@mck-law.com
kporter@mck-law.com
500 Office Park Drive, Suite 210
Birmingham, AL 35233
Attorneys for PES

*/s/Michael Gregory*
Michael Gregory, Esq.
Hunter C. Carroll, Esq.
Anna M. Tullar, Esq.
HAGWOOD AND TIPTON, P.C.
600 Vestavia Parkway, Suite 125
Birmingham, AL 35216
hcarroll@hatlawfirm.com
mgregory@hatlawfirm.com
atullar@hatlawfirm.com

50